PER CURIAM.
Florida Department of Highway Safety and Motor Vehicles (Department) dismissed Humphries from his position as a Florida highway patrolman for a willful violation of the statutory law and departmental policies. Humphries appeals. We affirm.
Humphries, a Florida highway patrolman for 24 years, tentatively agreed with his supporters that he would run for sheriff of Orange County. He checked with Dixie Barber, the Orange County Supervisor of Elections regarding the applicability to him of Section 99.012(7),[1] Florida Statutes (1979), which exempts “subordinate personnel, deputy sheriffs], or police officer[s]” from the general resign-to-run requirements of Section 99.012, Florida Statutes (1979). According to both Barber and Dorothy Glisson, the State Supervisor of Elections, Florida highway patrolmen were “officers” and would not be required to resign-to-run. Shortly, thereafter, Humphries submitted a letter to Colonel Beach, the Director of the Florida Highway Patrol, detailing his plans and Beach requested an opinion from the Department’s general counsel regarding the applicability of Section 99.012(7). The general counsel’s opinion was issued on November 1, 1979, and concluded that the operation of Section 99.-012(7) was restricted to the provisions of Section 99.012 generally and did not affect the requirements of Section 110.092(4)(a) *1313 [now 110.233(4)(a)][2] which requires that a Career Service employee get permission to run for office before becoming a candidate. On November 6,1979, this opinion was communicated to Humphries with a letter in which he was specifically told that he would have to resign before he began his political campaign and must avoid any suggestion that he was campaigning while still a member of the Highway Patrol. On November 14, 1979, Humphries contacted Representative Reynolds, the sponsor of the bill which culminated in Section 99.012(7), and asked if Reynolds intended that the exception include the Highway Patrol. After being told that Reynolds did intend to exempt Florida highway patrolmen, Humphries made a formal announcement of his candidacy for the office of sheriff.
The Department then requested an opinion from the Attorney General who reached the same conclusion as the Department’s counsel. The Department instituted an investigation into Humphries’ activities which resulted in a finding that Humphries was openly and actively campaigning for sheriff while working as a Florida highway patrolman. He was given written notice that he was in violation of departmental policy and statutory law. In response, he requested a leave of absence whenever appropriate under Section 99.012(7). The request was denied and Humphries was notified of proposed disciplinary action. After an informal conference he was dismissed for continued willful violation of statutory authority, rules, regulations and departmental policy.
Humphries, meanwhile, had requested a formal opinion from Glisson which was issued on May 2,1980, and which opined that Humphries was an “officer” and “subordinate personnel” within the meaning of Section 99.012(7). However, the opinion specifically noted that it was limited to construction of Section 99.012(7) and did not purport to construe Section 110.233(4) and concluded: “Therefore, Florida highway patrol officers should not rely upon this ruling as a decision construing Section 110.233(4), F.S.”
Humphries first argues that any violation of law or policy on his part was not willful. We cannot agree. While Hum-phries may have been acting in good faith when he first considered becoming a candidate, by February, 1980, he was well aware of the Department’s position and that of the Attorney General regarding his candidacy. In spite of this, he ignored the requirements of Section 110.233(4) and continued to actively campaign. The record contains competent, substantial evidence supporting the Department’s finding that he willfully violated the applicable statutes as interpreted by the Department as well as the rules and regulations of the Department.
We must also conclude that the Department’s interpretation of the law is correct. Section 99.012(7) begins “For purposes of this section .... ” This language is not ambiguous and clearly restricts the application of subsection (7) to Section 99.-012. We reject appellant’s argument that Sections 99.012(7) and 110.233(4)(a) are so repugnant as to justify an implied repeal of one by the other. Reading the statutes in pari materia, we determine that they have separate spheres of operation: Section 99.-012 is generally known as the Resign-to-Run Act and is concerned with dual office holding and with candidates for public office who already hold elective or appointive *1314 office with the state, a county or a municipality, and requires these persons to resign from their present office before becoming a candidate for another public office; Section 99.012(7) exempts certain named groups from this requirement, allowing them to take a leave of absence rather than resign. Section 110.233 specifically regulates the political activities of Career Service employees and is merely one portion of a comprehensive legislative enactment governing all aspects of state employment. Section 110.-233 was originally enacted by Chapter 67— 437 § 9, Laws of Florida (1967), and has, since that time, contained language restricting the political activities of Career Service employees. Absent some indication that the legislature intended to make a major substantive change in the application of this prohibition or repeal it with respect to Florida highway patrolmen or any other specific group of Career Service employees, we decline to find an implied repeal in Section 99.012(7). Implied repeal of statutes is not favored, State ex rel. School Board of Martin County v. Dept. of Education, 317 So.2d 68 (Fla.1975), and we find nothing in Section 110.233 which would lead us to conclude that the legislature intended to exempt Florida highway patrolmen from its coverage.
All Career Service employees are subject to the requirements of Section 110.-233(4)(a); relatively few are elected or appointed officers. Those who are must comply with the requirements of both statutes. Assuming that Humphries was included within the purview of Section 99.012 and then exempted by Section 99.012(7), he would still be required to comply with Section 110.233(4)(a).
We must also reject appellant’s argument that the dismissal was premature in that Humphries had not yet become a candidate. Under the provisions of Section 99.012(7) upon which Humphries seeks to rely, a person exempted from actually resigning to run “shall take a leave of absence without pay from his employment during the period in which he is seeking election to public office.” Certainly at the time of his dismissal, Humphries was already seeking election to public office. A campaign manager had been hired; leaflets, cards and other election paraphernalia had been prepared and were being distributed to potential voters. These activities were officially sanctioned by Humphries and support the conclusion that he was a candidate within the meaning of Section 110.233(4)(a) and was seeking public office within the meaning of Section 99.012(7), even though he had not yet qualified. In view of the well known fact that campaign activities often pre-date qualifying by months, we conclude the legislature did not intend to limit these requirements to those persons who had actually qualified.
Accordingly, the final agency action appealed from is AFFIRMED.
SHIVERS and WENTWORTH, JJ., and WOODIE A. LILES (Ret.), Associate Judge, concur.

. “For the purposes of this section, no individual who is a subordinate personnel, deputy sheriff, or police officer need resign pursuant to subsection (2) or subsection (3) unless such individual is seeking to qualify for a public office which is currently held by an individual who has the authority to appoint, employ, promote, or otherwise supervise that subor-díñate personnel, deputy sheriff, or police officer and who has qualified as a candidate for reelection to that public office. However, any such personnel, deputy sheriff, police officer, or other such individual shall take a leave of absence without pay from his employment during the period in which he is seeking election to public office.”

. “(4) As an individual, each employee retains all rights and obligations of citizenship provided in the constitution and laws of the state and the constitution and laws of the United States. However, no employee in the career service shall: (a) Hold, or be a candidate for, public or political office while in the employment of the state or take any active part in a political campaign while on duty or within any period of time during which he is expected to perform services for which he receives compensation from the state. However, when authorized by his agency head and approved by the Department of Administration as involving no interest which conflicts or activity which interferes with his state employment, an employee in the career service may be a candidate for or hold local public office. The Department of Administration shall prepare and make available to all affected personnel who make such request a definite set of rules and procedures consistent with the provisions herein.”